## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **SHELLEY WEBB** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | **Civil Action No:** |
| **v.** | ) | |
| | ) | |
| **CITY OF GOODLETTSVILLE,** | ) | **Judge:** |
| **TENNESSEE;** | ) | |
| | ) | **Magistrate Judge:** |
| **JOSHUA MALONE;** | ) | |
| | ) | **JURY DEMAND** |
| **CORY LOPP;** | ) | |
| | ) | |
| **ZACHARY SCANNELL;** | ) | |
| | ) | |
| *Defendants.* | ) | |

---

## COMPLAINT

---

1. Plaintiff brings this action for damages alleging that Defendants violated her federal constitutional right against false arrest and malicious prosecution on October 31, 2025. Plaintiff seeks compensation and other just and appropriate relief for these violations of her legal rights.

## <u>PARTIES</u>

2. **Plaintiff Shelley Webb ("Ms. Webb")** is an adult resident of Sumner County, Tennessee.

3. **Defendant City of Goodlettsville, Tennessee ("Goodlettsville")** is a governmental municipal entity organized under the laws of the State of Tennessee and located in Davidson County, Tennessee.

1

4. **Defendant Joshua Malone ("Officer Malone")** is an adult resident of Tennessee. At all times relevant to this complaint, Officer Malone was a sworn police officer employed by the Goodlettsville Police Department ("GPD") who served in the capacity of a Field Training Officer ("FTO").

5. **Defendant Cory Lopp ("Officer Lopp")** is an adult resident of Tennessee. At all times relevant to this complaint, Officer Lopp was a sworn police officer employed by GPD.

6. **Defendant Zachary Scannell ("Sergeant Scannell")** is an adult resident of Tennessee. At all times relevant to this complaint, Sergeant Scannell was a sworn police officer employed by GPD who served in the capacity of an FTO.

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction over the federal claims in this matter pursuant to 28 U.S.C. § 1331. Venue lies in this district pursuant to 28 U.S.C. § 1391(b)(2) because Defendants reside in this district and the events at issue in this lawsuit occurred in this district.

## FACTUAL BACKGROUND

### A. Background

8. At the time of the incident at issue in this lawsuit, Plaintiff Ms. Webb was a forty-three year-old married mother of five.

9. Plaintiff is employed full-time as a payroll specialist.

10. Plaintiff is also a registered sex offender, due to a statutory rape conviction for a consensual relationship she engaged in with a teenage male in 2014.

2

11. Plaintiff completed her court-ordered punishments for her statutory rape offense several years ago, but remains subject to the terms of Tennessee's sex offender registration and monitoring laws, articulated at T.C.A. § 40-39-201 *et seq.* ("SORVTA").

12. Ms. Webb has no other criminal record besides the statutory rape offense that put her on the registry, and the arrest and unfounded charges at issue in this lawsuit.

**B. Defendants' Misunderstanding of "Operation Blackout"**

13. On October 31, 2025 – Halloween – Defendants engaged in a proactive operation to enforce upon registered local sex offenders what Defendants believed to be the SORVTA requirements and prohibitions.

14. Thus, Defendants proactively went out to registered sex offenders' homes to determine whether the offender was in compliance, with the intent to arrest and criminally charge any offender that Defendants believed was not in compliance.

15. However, Defendants mistakenly believed that "Operation Blackout" – a Tennessee Department of Corrections ("TDOC") policy that applies only to sexual offenders under active probation or parole supervision – was a part of the statutory SORVTA restrictions.

16. Thus, Defendants mistakenly believed that "Operation Blackout" applied to *all* offenders required to register under SORVTA, rather than just to those offenders who were under TDOC's "sex offender" probation or parole supervision.

17. TDOC's "Operation Blackout" policy prohibits sex offenders under probation or parole supervision from participating in Halloween in various ways, such as by turning their porch lights off. (Ex. A, Operation Blackout Letter).

18. In addition to Defendants' mistake as to whether Blackout applied at all to former offenders not under probation or parole supervision, Defendants also mistakenly believed

3

that Blackout included additional restrictions that it did not actually include – namely, that it required all former sex offenders to be in their homes from 6pm – 4am on Halloween, and that it prohibited all former offenders from having Halloween decorations at their homes.

19. Blackout did not, in fact, include these particular restrictions even for sex offenders under probation or parole supervision. *Id.*

**C. Defendants Falsely Arrest Ms. Webb and Criminally Charge her for an "Operation Blackout violation"**

20. On October 31, 2025, at approximately 8:50 P.M., Defendant GPD Officers Malone and Lopp were on patrol in Goodlettsville, Tennessee.

21. On information and belief, Lopp was at the time a new officer, still in his initial field training period during which he was not authorized to patrol without the supervision of a field training officer ("FTO").

22. On information and belief, Malone was Lopp's assigned FTO that night.

23. That night, Malone and Lopp were proactively engaged in going to the homes of registered sex offenders to arrest any whom Defendants deemed to be out of compliance with any of the SORVTA or "Operation Blackout" restrictions.

24. At the time, Officer Malone mistakenly believed that TDOC's "Operation Blackout" prohibitions were part of the SORVTA laws, and that Operation Blackout applied to all registered sex offenders.

25. In addition, Malone believed that Blackout imposed a Halloween curfew on all registered offenders from 6pm – 4am, and prohibited decorations at registered offenders' homes.

4

26. On information and belief, as a new officer, Officer Lopp had no idea whether Operation Blackout applied to Ms. Webb or not and no idea what the Blackout restrictions were; however, Lopp took it as a given that Malone, Lopp's assigned FTO, was correct.

27. Malone was in regular contact with Defendant Scannell, consulting with Scannell about the SORVTA and Operation Blackout restrictions.

28. Sergeant Scannell, like Malone, mistakenly believed that Operation Blackout applied to all registered sex offenders, even those not on TDOC probation or parole, and that Blackout imposed a curfew and prohibited decorations.

29. Malone and Lopp went to Ms. Webb's home to check her compliance with what they believed to be her sex offender requirements and restrictions.

30. Malone and Lopp noted that Ms. Webb had decorations on her porch, and noted that the porch light was on.

31. Based on these observations Malone formed the mistaken opinion that Ms. Webb was in violation of her SORVTA restrictions, and thus believed her to be guilty of a felony.

32. As Malone and Lopp approached Ms. Webb's home, Ms. Webb's 6-year-old son was sitting in the entryway, not far from the glass front door.

33. Malone and Lopp went up to Ms. Webb's door, entreated the young boy to talk to them, and then asked if any adults were home.

34. At the time that Malone and Lopp first arrived at her home, Ms. Webb was down the street at her in-laws' house.

35. Shortly after Ms. Webb's son came to the door, Ms. Webb's mother, Ms. Brown, came to the door and spoke to the officers.

5

36. The officers informed Ms. Brown that Ms. Webb was in violation of the sex offender registry because of the decorations and porch light.

37. The officers then attempted to interrogate Ms. Brown to find out if Ms. Webb had taken any of her children trick-or-treating.

38. Ms. Brown said that Ms. Webb was headed back to the house.

39. Malone and Lopp asked Ms. Brown to declare exactly when Ms. Webb was coming back; however, Ms. Brown stated that she did not know.

40. Malone and Lopp got into their patrol car while waiting for Ms. Webb to return home.

41. Malone mistakenly believed that just being out of the house put Ms. Webb in violation.

42. Ms. Webb and her husband returned home.

43. Malone and Lopp returned to Ms. Webb's door, and Lopp knocked.

44. Malone chided Lopp for not knocking hard enough.

45. Ms. Webb's husband came to the door, informed the officers that Ms. Webb was in the shower, and said he would get her.

46. While the officers waited outside, Malone spoke with Defendant Scannell over the phone.

47. Scannell told Malone that Ms. Webb was in violation of SORVTA because of her porch light and decorations, based on Scannell's mistaken belief that "Operation Blackout" applied to all registered offenders.

48. Ms. Webb came to the door, and Malone and Lopp spoke with her.

49. Malone told Ms. Webb that she was in violation of SORVTA because of her decorations and porch light.

50. Malone then read the TDOC "Operation Blackout" restrictions to Ms. Webb, and informed her that she had to be arrested because she had violated them.

6

51. Malone then had Lopp handcuff Ms. Webb.

52. Ms. Webb attempted to explain to Malone that Operation Blackout did not apply to her because she was not on probation.

53. Malone and Lopp understood that Ms. Webb was not on probation or parole, but nonetheless insisted that Operation Blackout applied to her.

54. Thus, Malone blithely told Ms. Webb that she was wrong, and that Operation Blackout applies to all sex offenders – including her.

55. Malone and Lopp then took Ms. Webb into custody.

56. Ms. Webb's husband then asked Malone what was happening.

57. Malone told Ms. Webb's husband that Ms. Webb had violated the sex offender registry, and that she was being arrested and taken to jail for the supposed violations.

58. Ms. Webb's husband attempted to explain to Malone and Lopp that Operation Blackout did not apply to Ms. Webb, because she was not on probation.

59. However, Malone again blithely ignored this attempt to clear up the officers' mistake.

60. Malone and Lopp then drove Ms. Webb to the Sumner County jail, and had her booked in on an alleged violation of T.C.A. § 40-39-208, a felony SORVTA violation.

61. At Malone's direction, Lopp executed an arrest report alleging the basis of the arrest as:

> On 10/31/2025 officers looked up local registered sex offenders residing in the city of Goodlettsville for Halloween night. Officer Lopp and FTO Malone located Shelley Webb on the sex offender registry, and drove by her residence to see if she was in compliance. Upon arrival, I witnessed Halloween decorations and the porch light was turned on, as if expecting trick-or-treaters to visit, making her residence out of compliance with the sex offender registry. I made contact with the residents who confirmed that Shelley did live at the residence. When asked about the whereabouts of Shelley, the residents stated that she was up the road at her in-laws house with her child. Upon Shelley returning to the residence, I made contact and confirmed that Shelley was on the sex offender registry through dispatch. I advised her that due to the decorations, the porch light being on, and because she was partaking in Halloween festivities, she was out of compliance

7

with the guidelines of the sex offender registry. She was taken into custody for violation of sex offender registry.

62. At Malone's direction, Lopp then sought formal criminal charges via a General Sessions Court "Affidavit of Complaint." In support of these felony charges, Lopp restated the same language from the arrest report, in the following affidavit:

On 10/31/2025 officers looked up local registered sex offenders residing in the city of Goodlettsville for Halloween night. Officer Lopp and FTO Malone located Shelley Webb on the sex offender registry, and drove by her residence to see if she was in compliance. Upon arrival, I witnessed Halloween decorations and the porch light was turned on, as if expecting trick-or-treaters to visit, making her residence out of compliance with the sex offender registry. I made contact with the residents who confirmed that Shelley did live at the residence. When asked about the whereabouts of Shelley, the residents stated that she was up the road at her in-laws house with her child. Upon Shelley returning to the residence, I made contact and confirmed that Shelley was currently on the sex offender registry through dispatch. I advised her that due to the decorations, the porch light being on, and because she was partaking in Halloween festivities, she was out of compliance with the guidelines of the sex offender registry. She was taken into custody for violation of sex offender registry.

63. Based on Defendants' erroneous allegations, Ms. Webb was then charged in the Sumner County General Sessions Court with a felony for an alleged SORVTA violation.

**D. Plaintiff's false arrest and prosecution were the result of GPD custom**

64. On information and belief, Field Training Officers Malone's and Scannell's conflation of TDOC's "Operation Blackout" regulations with the SORVTA restrictions were representative of GPD's customary practice on this issue.

65. On information and belief, GPD had an established custom at the time of Ms. Webb's arrest of mistakenly conflating "Operation Blackout" and SORVTA restrictions, and of proactively enforcing "Operation Blackout" on Halloween as if it applied to all registered offenders rather than just to TDOC probationers and paroolees.

8

66. Plaintiff's arrest and unfounded criminal charges were the result of GPD's custom of enforcing "Operation Blackout" on all registered sex offenders, including those like her who were not actually subject to TDOC's restrictions.

### E. The State dismisses the unfounded criminal charges

67. Ms. Webb posted bond and was released from jail.

68. On Monday, November 3, 2025, Ms. Webb contacted her registry reporting officer, Detective Eric Poulin with the Sumner County Sheriff's Office.

69. Ms. Webb explained the situation and arrest to Detective Poulin, who stated that he did not understand why she would have been arrested under those circumstances.

70. On information and belief, after Ms. Webb hung up the call with Detective Poulin he contacted Goodlettsville Police Department to convey the fact that the arrest had been erroneous, because TDOC's Operation Blackout restrictions did not apply to Ms. Webb.

71. Ms. Webb retained private criminal defense counsel.

72. Ms. Webb's criminal defense counsel discussed Ms. Webb's case with the assigned Assistant District Attorney, who ultimately agreed that Ms. Webb was innocent of the alleged SORVTA violation.

73. On December 18, 2025, the Sumner County General Sessions Court dismissed the SORVTA violation charge at the request of the State.

9

## CLAIMS FOR RELIEF

### COUNT I: FALSE ARREST IN VIOLATION OF THE
### FOURTH AMENDMENT TO THE U.S. CONSTITUTION
### (42 U.S.C § 1983)

### (ALL DEFENDANTS)

74. Plaintiff hereby reincorporates paragraphs 1 – 73 by reference.

75. On October 31, 2025, Defendants Lopp and Malone arrested Ms. Webb.

76. Defendant Scannell participated in the decision to arrest Ms. Webb, by erroneously advising Malone that Ms. Webb was in violation of SORVTA.

77. On information and belief, Malone and Lopp arrested Ms. Webb based on a GPD custom of conflating TDOC's "Operation Blackout" restrictions with the SORVTA restrictions, and adding additional restrictions not even included in Blackout.

78. Defendants lacked probable cause to arrest Ms. Webb.

79. Defendants acted under color of state law in arresting Ms. Webb.

80. The individual Defendants acted in blatant disregard for Ms. Webb's constitutional rights, disregarding the efforts that Ms. Webb and her husband each made to explain that the Operation Blackout restrictions did not apply to Ms. Webb.

81. Defendants' illegal arrest caused Ms. Webb to suffer a deprivation of liberty, physical discomfort, and severe emotional harm.

10

## COUNT II: MALICIOUS PROSECUTION IN VIOLATION OF THE
## FOURTH AMENDMENT TO THE U.S. CONSTITUTION
## (42 U.S.C § 1983)

### (ALL DEFENDANTS)

82. Plaintiff hereby reincorporates paragraphs 1 – 73 by reference.

83. On October 31, 2025, Defendant Lopp initiated criminal felony charges against Ms. Webb for an alleged SORVTA violation.

84. Defendants Malone and Scannell participated in the decision to charge Ms. Webb, by erroneously advising each other and Lopp that the Operation Blackout restrictions apply to all SORVTA registrants.

85. On information and belief, the unfounded criminal charges were the result of a GPD custom of conflating the TDOC Operation Blackout restrictions for probationers with the general SORVTA restrictions that apply to all registrants, and adding additional restrictions not even included in Blackout.

86. The unfounded criminal charge imposed a secondary deprivation of liberty on Ms. Webb by causing her to be jailed pending the posting of her bond and be subject to bond conditions.

87. The unfounded criminal charge lacked probable cause.

88. The unfounded criminal charge was ultimately dismissed at the request of the State.

89. Defendants acted under color of state law in filing the unfounded criminal charge.

90. The individual Defendants acted in blatant disregard for Ms. Webb's constitutional rights disregarding the efforts that Ms. Webb and her husband each made to explain that the Operation Blackout restrictions did not apply to Ms. Webb.

91. Defendants' unfounded criminal charge caused Ms. Webb to suffer a deprivation of liberty, physical discomfort, financial harm, and severe emotional harm.

### COUNT III: SUPPRESSION OF EXPRESSION IN VIOLATION OF THE FIRST AMENDMENT TO THE U.S. CONSTITUTION
### (42 U.S.C § 1983)

### (ALL DEFENDANTS)

92. Plaintiff hereby reincorporates paragraphs 1 – 73 by reference.

93. On October 31, 2025, Defendants arrested and charged Ms. Webb based on the fact that her porch was decorated for Halloween and because her porch light was on.

94. The decorations and porch light did not violate any criminal statute, and Defendants did not have probable cause of any criminal offense to support the arrest and criminal charge.

95. Defendants' conduct punished Ms. Webb for expressing herself through her home holiday decorations.

96. Defendants' conduct would deter a person of ordinary firmness from feeling free to express herself through holiday decorations.

97. On information and belief, the unfounded criminal charges were the result of a GPD custom of conflating the TDOC Operation Blackout restrictions for probationers with the general SORVTA restrictions that apply to all registrants, and adding additional restrictions not even included in Operation Blackout.

98. Defendants acted under color of state law in arresting and charging Ms. Webb.

99. The individual Defendants acted in blatant disregard for Ms. Webb's constitutional rights, disregarding the efforts that Ms. Webb and her husband each made to explain that the Operation Blackout restrictions did not apply to Ms. Webb.

12

100.     Defendants' unconstitutional conduct caused Ms. Webb to suffer a deprivation of liberty, physical discomfort, financial harm, and severe emotional harm.


## **REQUEST FOR RELIEF**

**WHEREFORE**, these premises considered, Plaintiff prays:

1. That the Defendants Answer this Complaint within the time provided by law.

2. That this cause be tried by a jury.

3. That judgment for Plaintiff enter against the Defendants on each count.

4. That Plaintiff be awarded nominal, compensatory, and punitive damages against Defendants in an amount to be determined by a jury.

5. That Plaintiff be awarded attorney's fees and reasonable litigation expenses, including expert witness fees, pursuant to 42 U.S.C. § 1988 and F.R. Civ. Pro. 54(d).

6. That the court costs in this matter be taxed to Defendants.

7. That Plaintiff be awarded pre- and post-judgment interest.

8. That Plaintiff be awarded all other relief to which it may appear she is entitled in the interests of justice.


Respectfully submitted,

*s/ Kyle Mothershead*
Kyle Mothershead, BPR 22953
Relentless Advocacy, PLLC
7000 Executive Center Drive, Suite 240
Brentwood, TN 37027
T: (615) 891-3901 / F: (615) 229-6387
E: Kyle@relentlesslaw.com

13

*s/ Ryan C. Davis*
Ryan C, Davis, BPR 34588
Ryan C. Davis Law, PLLC
1224 2nd Ave South, Suite 102
Nashville, TN 37210
T: (615) 649-0110 / F: (615) 290-5013
E: ryan@ryancdavislaw.com